## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

PAMELA GOSSETT,         )
                      )
      Plaintiff       )
                      )
   vs.             )   Case No.   4:18-cv-00676-HNJ
                      )
COMMISSIONER, SOCIAL SECURITY  )
ADMINISTRATION,         )
                      )
      Defendant     )

## MEMORANDUM OPINION

Plaintiff Pamela Gossett seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Supplemental Security Income. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would

prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(g). If the claimant can perform other work, the evaluator will not find the

claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Applying the five-step sequential process, the ALJ determined at step one that Gossett had not engaged in substantial gainful activity from her alleged onset date of May 30, 2014, through the date of the ALJ's opinion, June 12, 2017. (Tr. 12). At step two, the ALJ found that Gossett suffers the following severe impairments: fibromyalgia, diverticulitis, mild scoliosis, alcohol abuse, major depressive disorder, and panic disorder with agoraphobia. *Id.* At step three, the ALJ concluded that Gossett's impairment or combination of impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Next, the ALJ found that Gossett exhibited the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) but with certain limitations.[2] (Tr. 14-15). At step four, the ALJ found that Gossett could not perform her past relevant work as a teacher for the emotionally disturbed or intellectually disabled. (Tr. 20). At step five, the ALJ relied upon a vocational expert to conclude the claimant can perform

---

[2] The ALJ described the following limitations:

> The claimant is able to occasionally use bilateral foot controls. She can frequently climb ramps and stairs but never climb ladders or scaffolds. She can frequently stoop but can only occasionally crouch, kneel and crawl. The claimant should never be exposed to unprotected heights, dangerous tools, dangerous machinery, hazardous processes or operate commercial motor vehicles. She would be limited to routine and repetitive task and making simple work related decisions. She would not be able to perform at a production rate pace but can perform goal-oriented work. She could have frequent interaction with supervisors but only occasional interaction with co-workers and no interaction with the general public. In addition to normal workday breaks, she would be off-task 5% of an 8-hour workday (non-consecutive minutes).

(Tr. 14-15).

other work that exists in significant numbers in the national economy, such as machine tender, marker, and cleaner.   (Tr. 21).

On February 27, 2018, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.   (Tr. 1-3).   On May 1, 2018, Gossett filed her complaint with the court seeking review of the ALJ's decision.   (Doc. 1).

## ANALYSIS

In this appeal, Gossett contends substantial evidence does not support the ALJ's decision because he failed to conduct a proper analysis of her fibromyalgia impairment. She faults the ALJ for allegedly rejecting fibromyalgia as a disabling severe impairment; therewith, the ALJ failed to assess any limitations arising from to her fibromyalgia.   In addition, Gossett contends that proper delineation of the fibromyalgia impairment would have engendered evaluations at step three whether her condition equaled Listing 14.09D.[3] The court finds substantial evidence supports the ALJ's opinion regarding the fibromyalgia assessment.

## I.    The ALJ Properly Assessed Gossett's Fibromyalgia and Any Limitations Therefrom

---

[3] Gossett argues the ALJ should have properly assessed her fibromyalgia in the context of Listing 14.09D. Subsequently, she relents the argument: " this Court's review of this evidence and whether claimant's FM does or does not medically equal Listing 14.09D are matters for another day."   (Doc. 15 at 15). Nonetheless, the court will address Gossett's contention regarding Listing 14.09D.

Gossett contends the ALJ erred by rejecting her fibromyalgia diagnosis as a severe impairment and treating it "somehow not medically proven." (Doc. 15 at 15, 16).[4] Admittedly, the ALJ's decision obscures the findings on this issue. Although the ALJ includes fibromyalgia as a severe impairment at step two of his analysis, (Tr. 12), he discredits the diagnosis at step four in finding that the evaluation did not satisfy the applicable assessment for the condition. (Tr. 17).

Gossett's challenge still misses the mark, however. First, the prevailing regulatory standard does not support the propriety of the fibromyalgia diagnosis, as countenanced by the ALJ. Second, the ALJ included fibromyalgia as a severe impairment in the RFC he constructed.

## A.    Gossett's Fibromyalgia Diagnosis Does Not Satisfy SSR 12-2p

Gossett faults the ALJ for rejecting her fibromyalgia diagnosis due to the absence of at least 11 tender points depicting the presence of the condition. However, the ALJ properly relied on SSR 12-2p's requirements to find Gossett's fibromyalgia did not render her disabled, and substantial evidence supports his determination.

---

[4] When an ALJ recognizes at least one severe impairment and proceeds to step three of the sequential evaluation process, there exists no requirement to identify additional impairments at the second step where the decision demonstrates the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. When the ALJ considered all medical evidence in the record, such as by referencing the claimant's "combination of impairments" at step three and stating he or she considered "all symptoms" in assessing the RFC, this satisfies the ALJ's responsibility. *Id.* at 951-52.

SSR 12–2p governs the assessment whether a claimant suffers a fibromyalgia impairment. *See* SSR 12–2p, 2012 WL 3104869 (July 25, 2012).[5] When an ALJ determines fibromyalgia constitutes an impairment, SSR 12-2p directs the ALJ to evaluate the intensity and persistence of the claimant's pain or any other symptoms and determine the extent to which the symptoms limit the claimant's capacity for work.

SSR 12-2p states the Social Security Administration "will find that a person has an MDI [medically determinable impairment] of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12–2p, 2012 WL 3104869, at *2. Sections II.A and II.B include two sets of criteria for diagnosing fibromyalgia -- the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *Id.*

The first set of criteria (1990) requires the claimant to demonstrate: (1) a history of widespread pain[6]; (2) at least 11 positive tender points[7] on physical examination, occurring

---

[5] SSR 12-2p constitutes an "agency ruling[ ] published under the authority of the Commissioner of Social Security and [ ] binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (internal quotations omitted). Gossett relies on out-of-circuit cases to challenge the ALJ's reliance on the absence of tender points (*see* Doc. 15 at 15-16). However, these cases do not bind this court, *see McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985), and they also predate SSR 12-2p.

[6] The regulation defines "widespread pain" as "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

bilaterally on the left and right sides of the body and both above and below the waist; and (3) evidence that other disorders which could cause the symptoms or signs were excluded. SSR 12–2p, 2012 WL 3104869, at *2-3 (§ II.A.1.–3.criteria).

The second set of criteria (2010) requires the claimant to demonstrate: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions[8]; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12–2p, 2012 WL 3104869, at *3.

Moreover, the Ruling provides:

> [W]e cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

*Id.* at *3.

---

[7] SSR 12-2p locates 18 bilateral tender point sites at the occiput, base of the neck, second rib, trapezius, supraspinatus, lateral epicondyle, gluteal, greater trochanter, and knee.

[8] SSR 12-2p especially mentions "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." Significant somatic symptoms can include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. Other co-occurring conditions may include anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome.

On September 15, 2015, Gossett's podiatrist diagnosed her with plantar fasciitis (Tr. 338), yet he opined fibromyalgia may have caused her foot pain symptoms and certain test results indicated fibromyalgia or an autoimmune disorder. (Tr. 448). Therefore, Gossett underwent examination at the Harbin Medical Clinic, Rheumatology Main Clinic on November 4, 2015. (Ex. 12F).

Dr. Keith Rott performed a physical examination and ordered blood tests. His physical examination revealed no apparent distress; normal mood and affect; no enlarged salivary glands or lymph nodes; no rashes; normal ear, nose, mouth, and throat; normal respiratory and cardiovascular function; normal gait and station; normal muscle strength and tone; no extremity edema; no swelling or tenderness in her feet; and full range of motion in the hands, wrists, elbows, shoulders, knees, hips, and ankles. (Tr. 449-50). Gossett exhibited mild diffuse abdominal tenderness and diffuse muscle tenderness to palpation. (Tr. 449). She also suffered from vitamin D deficiency. (Tr. 450). Based on Gossett's symptom reports, his examination, and review of some of Gossett's medical records, Dr. Rott assessed multiple joint pain, fatigue, raised antinuclear antibody, primary fibromyalgia syndrome, and vitamin D deficiency. (Tr. 450).

Gossett's medical records contain some reports of muscle pain, fatigue, vomiting, and diarrhea. (Tr. 293, 299, 348, 444, 448). [9] While SSR12-2p identifies these as co-occurring conditions, Gossett did not exhibit at least six of the SSR 12-2p co-occurring

---

[9] Gossett entered Cherokee Medical Center on April 14, 2017, due to abdominal pain. (Ex. 10F). Dr. Brian Perry diagnosed diverticulitis, which resolved after IV antibiotic treatment.

conditions on a repeated basis. For example, during a September 23, 2014, examination by Dr. Vipul Amin, Gossett denied muscle aches, joint stiffness or pain, swollen joints, weakness, gait abnormality, loss of strength, painful extremities, and anxiety. (Tr. 262). On June 2, 2015, Dr. Morton Rickless noted no musculoskeletal complaints. (Tr. 318). Gossett exhibited no signs of pain or swelling in her hands, no back spasms, normal gait, 5/5 strength, normal range of motion, and normal gross and fine manipulation. (Tr. 320, 323-34).

On June 26, 2015, Gossett received a wellness check at Perry's Medical Clinic, complaining only of elevated cholesterol and blood pressure. (Tr. 445). Gossett sought chiropractic treatment on September 18, 2015, at which time she complained only of pain on the bottoms of both feet. Physical examination revealed no pedal edema, good range of motion in feet and ankles, no pain or crepitus on range of motion, and only bilateral tenderness on the plantar band. (Tr. 337-38).

On September 23, 2015, Gossett complained of pain in her feet. (Tr. 444). On November 4, 2015, Dr. Rott noted Gossett presented with many complaints and many symptoms, "something different every day almost." (Tr. 448). Gossett mentioned longstanding foot pain in the bones, moving up to the knees after 30 minutes of standing; hand and wrist pain; shoulder pain; and all-over aches. (Tr. 448).

On August 4, 2016, CRNP Haley Trammell assessed Gossett with localized primary osteoarthritis of the ankle, with pain localized to one or more joints; anxiety disorder; and

"feeling tired or poorly." (Tr. 442). On March 22, 2017, CRNP Trammell assessed Gossett with localized primary osteoarthritis of the ankle, with pain localized to one or more joints. (Tr. 441). From June 2015 through March 2017, CRNP Trammell noted no complaints of back, foot, or fibromyalgia pain, and no extremity edema. (Tr. 440-46). Despite complaints to Trammell in April 2017 of lower back and diffuse pain (Tr. 439), later that month, Gossett denied joint pain, stiffness, or swelling; lower back pain; muscle pain; and weakness. (Tr. 349-50). Further, notes from that date on Gossett's past medical history do not include fibromyalgia. (Tr. 348).

As revealed by the foregoing recitation, the medical evidence does not mention tender point testing or the presence of at least 11 of the 18 tender points required by SSR 12-2p. Furthermore, this evidence did not reveal "repeated manifestations" over a longitudinal period of time of six or more fibromyalgia symptoms, signs, or co-occurring conditions, as required by Section II.B of SSR 12-2p. Therefore, Gossett's fibromyalgia diagnosis did not satisfy the criteria established by SSR 12-2p.

### B. The RFC Included the Limitations from Gossett's Impairments

Nevertheless, as recounted previously the ALJ assessed Gossett's fibromyalgia as a severe impairment, and more importantly, included all of her limitations in constructing her RFC.

"Residual functional capacity" represents "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. A "regular and continuing basis" corresponds to eight hours a day, for five days a week, or an equivalent work schedule. *Id.* The regulations define RFC as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources," as well as "descriptions and observations [provided by the claimant, family, neighbors, friends, or other persons] of [the claimant's] limitations. . ., including limitations that result from . . . symptoms such as pain." 20 C.F.R. § 404.1545(a)(3). The claimant bears the burden of providing evidence the Commissioner will use to establish an RFC. *See* 20 C.F.R. § 404.1512(c). The responsibility for determining a claimant's RFC resides with the ALJ. 20 C.F.R. §§ 404.1527(e), 404 .1546(c); SSR 96–5p.

The ALJ included fibromyalgia, major depressive disorder, and panic disorder with agoraphobia as "severe" impairments. (Tr. 12). He then considered the "entire record" and "all symptoms" in assessing Gossett's RFC. (Tr. 14-15). These statements indicate the ALJ considered all of Gossett's impairments. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010).

A diagnosis does not establish limitations. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). With fibromyalgia, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Klaes v. Comm'r of Soc. Sec.*, 719 F. App'x 893, 897 (11th Cir. 2017) ("even if fibromyalgia explained Klaes's pain, that alone does not compel a finding of disability"). Gossett's severe impairments include fibromyalgia, depression, and anxiety. However, no medical care provider linked her depression and anxiety with fibromyalgia. Medical tests ruled out autoimmune disorder or lupus as causes of her symptoms.

The ALJ discussed Gossett's subjective complaints, as well as the medical records. (Tr. 15). He found her subjective complaints about the intensity, severity, and limiting effects of her symptoms not entirely consistent with medical and other evidence. (Tr. 15-16). *See Harrison v. Comm'r of Soc. Sec.*, 596 F. App'x 874, 877 (11th Cir. 2014) (examinations of claimant with fibromyalgia "were consistently unremarkable: without "the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points"). Dr. Rickless found no limitation in Gossett's ability to sit, stand, walk, lift, carry, or handle objects. (Tr. 322). Dr. Rott found diffuse muscle tenderness, yet normal muscle tone and strength, no extremity edema, a normal gait and station, and normal range of motion throughout most major joints. (Tr. 449-50). The ALJ also found Gossett's conservative treatment for foot

pain inconsistent with the presence of debilitating pain. (Tr. 18). Even Dr. Perry opined Gossett had the physical capacity to perform light work. (Tr. 470-75). As discussed herein, the ALJ also properly evaluated Gossett's claims of mental limitations and her activities of daily living in concluding she exhibits a greater capacity than she claims. Substantial evidence supports the RFC which limits Gossett to light work with exertional and non-exertional limitations. He took into account her foot pain in limiting her to occasional use of bilateral foot controls and never climbing ladders or scaffolds. He accounted for her fibromyalgia in limiting her to occasional crouching, kneeling, and crawling. With regard to her depression and anxiety, he limited her to routine and repetitive tasks and making simple work related decisions; recognized she would not be able to perform at a production rate pace but can perform goal-oriented work, yet would be off-task 5% of an 8-hour workday; and limited her to only occasional interaction with co-workers and no interaction with the general public. He took into account her own statement that she experiences no problems with authority figures by allowing frequent interaction with supervisors.

In light of Gossett's medical records and her own function report, substantial evidence supports the ALJ's determination of her RFC. Gossett fails to demonstrate her impairments impose greater work-related limitations than those determined by the ALJ.

## II.    The ALJ Sufficiently Addressed Fibromyalgia at Step Three

Gossett contends the ALJ did not conduct a specific step three analysis regarding her fibromyalgia impairment, and therefore improperly reviewed her claim. In particular, Gossett asserts the ALJ erred by failing to discuss whether fibromyalgia met or medically equaled Listing 14.09D at step three. However, the court finds the ALJ implicitly found Gossett's fibromyalgia did not meet or medically equal any listing.

Notably, "it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *see also Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005); *Keane v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 750 (11th Cir. 2006); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011); *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012). And despite the specific guidance in SSR 12-2p, a determination that a claimant's impairments do not meet or equal a Listing may be implied from an ALJ's decision. *Hutchison*, 787 F.2d at 1463; *Johnson*, 148 F. App'x at 842; *Keane*, 205 F. App'x at 750; *Gray ex rel. Whymms*, 454 F. App'x at 750; *Kalishek*, 470 F. App'x at 870. When the ALJ renders an implied finding, the court must examine whether substantial evidence supports the ALJ's "findings and inferences." *Hutchinson*, 787 F.2d at 1463.

The ALJ did not explicitly cite SSR 12–2p or discuss Gossett's fibromyalgia at step three of the sequential evaluation. However, he did explicitly determine Gossett's fibromyalgia constituted a severe impairment, and Gossett did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 12, 14). The

latter determination signals implictly that Gossett's fibromyalgia, alone or in combination with her other severe impairments, did not meet or equal a Listing, specifically Listing 14.09D (Inflammatory Arthritis). Substantial evidence supports this implicit determination. *See Lemons v. Comm'r of Soc. Sec. Admin.*, No. 5:16-CV-01874-JHE, 2018 WL 1403615 (N.D. Ala. Mar. 20, 2018) (ALJ did not explicitly cite SSR 12–2p or discuss fibromyalgia at step three, yet he explicitly determined fibromyalgia constituted a severe impairment and claimant did not have an impairment or combination of impairments that met or medically equaled a Listing; latter determination implicitly finds fibromyalgia, alone or in combination with other severe impairments, did not meet or equal Listing 14.09); *Steele v. Soc. Sec. Admin., Comm'r*, No. 5:14-CV-01038-SGC, 2015 WL 5517283 (N.D. Ala. Sept. 18, 2015) (same).

Because fibromyalgia is not a listed impairment at step three of the sequential evaluation, an ALJ must determine whether it medically equals a Listing, alone or in combination with other severe impairments. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Gossett posits Listing 14.09D, which governs inflammatory arthritis, as a suitable substitute. (Doc. 15 at 13). That Listing establishes the following criteria for satisfying its strictures:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App. 1, § 14.09D.

Gossett claims she meets this Listing because she suffers physical ailments, including arthritis in her hands and feet, and emotional ailments, including her treating physician's assessment that she suffers marked limitations in her ability to interact with and respond appropriately to supervisors, co-workers, and the general public, and to respond appropriately to usual work situations and changes in a routine work setting. (Doc. 15 at 14-15, citing Ex. 13F).

As the Commissioner notes, Gossett's allegations of pain and marked limitations in functioning, without more, do not mandate a finding that those symptoms were repeated and severe, as required by the Listing. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir.2002) (citing 20 C.F.R. § 404.1525(a)-(d)); *see also* 20 C.F.R. § 416.925(a)-(d). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)); *see also* 20 C.F.R. § 416.926(a). A claimant's impairment must meet or equal all of the specified medical criteria in a particular Listing to warrant a favorable conclusion at step three of the sequential evaluation. *Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990). An impairment that manifests only some of the criteria does not qualify, no

matter how severe. *Id.* at 530. A claimant sustains a heavy burden to establish her impairment meets or equals a Listing is because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

Dr. Perry opined Gossett demonstrates marked limitations in interacting with others and responding appropriately to usual work situations and changes in routine. (Tr. 468). However, the ALJ found Gossett's mental status examinations generally unremarkable. (Tr. 17, 312-13). On August 26, 2014, Gossett expressed anxiety but denied depression. (Tr. 276). On September 23, 2014, Gossett denied anxiety, a depressed mood, or difficulty sleeping. (Tr. 262). From June 2015 through April 2017, medical records from CRNP Haley Trammell document routine follow-ups and prescriptions for psychotropic medication to treat anxiety and depression. (Ex. 11F). However, the records contain no complaints of depression or panic attacks and only one display of anxiety and crying on April 12, 2017 (Tr. 439).

On May 20, 2015, Dr. Samuel Fleming noted Gossett displayed a good and cooperative attitude; spontaneous, coherent, and goal-directed speech; good concentration and attention; no evidence of blocking, flight of ideas, loosening of associations, tangentiality, circumstantiality, or confusion; and appropriate affect. Dr. Fleming opined Gossett retained the capability to manage funds, function independently, and understand and carry out instructions. He assessed Gossett with a GAF of 55.[10] (Tr. 312-14). On

---

[10] A Global Assessment of Functionality (GAF) score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and

November 4, 2015, Gossett displayed normal mood and affect. (Tr. 449). On April 14, 2017, Gossett denied feeling hopeless or helpless. (Tr. 432). On April 15, 2017, Gossett had an unremarkable psychiatric exam. (Tr. 351).

The ALJ also found Gossett's activities of daily living inconsistent with her allegations of disabling pain. He noted Gossett lives alone without assistance, maintains personal care and hygiene, runs errands, performs household chores, prepares daily meals, drives, shops, and handles her finances. (Tr. 18, 227-30). Such activities allow the ALJ to discount Gossett's claims of disabling pain. *See May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (driving, dining out, and shopping for groceries inconsistent with claimant's assertions of disabling pain); *Teigen v. Comm'r, Soc. Sec. Admin.*, 677 F. App'x 519, 525 (11th Cir. 2017) (claimant failed to show marked limitation in activities of daily living when he lived alone, cooked, experienced no difficulty caring for himself, cleaned, and managed his finances); *Mathews v. Astrue*, No. CIV.A. 11-KOB-3996-M, 2013 WL 5428304, at *3 (N.D. Ala. Sept. 26, 2013) (claimant had only mild restrictions in activities of daily living based on evidence he groomed and dressed independently, cooked breakfast, cleaned floors, laundered clothes, and occasionally ran errands; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).

---

Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000). A GAF score of 51–60 indicates moderate impairments. *Id.* at 34.

Although Gossett's medical records note a diagnosis or reported history of fibromyalgia, they do not contain findings that her fibromyalgia at least equals the severity of the Listing 14.09D criteria. Gossett's treating physician, Dr. Brian Perry, opined Gossett experiences no limitation in her ability to understand, remember, and carry out instructions and retains the physical ability to perform light work, despite fibromyalgia and arthralgias. (Tr. 466, 467, 470-72). While Gossett testified she could only stand 10 to 15 minutes and walk one block, Dr. Perry opined she could stand and walk an hour at a time. (Tr. 471).

Dr. Perry declares any limitation in Gossett's functioning stems from her anxiety and panic disorder, rather than physical conditions, and her anxiety and panic disorder do not affect any capabilities other than interaction with supervisors or co-workers. (Tr. 466, 468, 470). However, in her Adult Function Report, Gossett avers she experiences no difficulty getting along with family, friends, neighbors, or others. (Tr. 232). She also attests she gets along well with authority figures, such as supervisors. (Tr. 233). The ALJ assessed Gossett with moderate limitations in interacting with others. (Tr. 13).

Dr. Vipul Amin treated Gossett on September 23, 2014, at which time she denied muscle aches, joint stiffness or pain, swollen joints, gait abnormality, loss of strength, and extremity pain. (Tr. 262). On June 21, 2015, Gossett complained to Dr. Morton Rickless of pain in her hands; however, she exhibited no pain upon examination. (Tr. 320). Her

gait displayed as normal; she demonstrated 5/5 strength; normal grip strength; no atrophy; and normal fine and gross manipulation. (Tr. 320).

Gossett sought chiropractic treatment on September 15, 2015, at which time she complained only of pain on the bottoms of both feet. Physical examination revealed no pedal edema, good range of motion in feet and ankles, no pain or crepitus on range of motion, and only bilateral tenderness on the plantar band. (Tr. 337-38). On May 9, 2016, August 4, 2016, and March 22, 2017, CRNP Haley Trammell assessed Gossett with localized primary osteoarthritis of the ankle, with pain localized to one or more joints, yet she noted no edema. (Tr. 441, 442, 444). From June 2015 through March 2017, CRNP Trammell noted no complaints of back, foot, or fibromyalgia pain, and no extremity edema. (Tr. 440-46).

At a physical examination on November 4, 2015, Gossett denied joint swelling. Dr. Keith Rott noted normal ambulation; normal muscle tone and strength; no hand, foot, ankle, or knee edema; and full range of motion in Gossett's hands, wrists, elbows, shoulders, ankles, knees, and hips. (Tr. 449-50).

Because the medical records do not demonstrate Gossett can satisfy the requirements for Listing 14.09D, substantial evidence supports the ALJ's implicit determination at step three that Gossett's impairments did not meet or medically equal any listing.

## CONCLUSION

Based on the foregoing analysis, the court **AFFIRMS** the ALJ's decision. The court will enter a separate order in conformity with this Memorandum Opinion.

**DONE** this 12th day of August, 2019.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE